Hines, J.
INTRODUCTION
In this wrongful death action, the plaintiffs seek damages for injuries sustained by Patricia Gentes on January 7, 1998 when an escalator on which she was riding in the South Station Terminal stopped without warning, causing her to fall. Gentes filed this action on July 30, 1999 against the Massachusetts Bay Transportation Authority (“MBTA”) which owned the Terminal, Equity which managed the Terminal’s daily operation, and KONE which designed, manufactured, installed and provided maintenance for the escalator. Plaintiffs, the co-administrators of Gentes’ estate, filed this Amended Complaint alleging negligence (Count I); “willful and wanton” conduct (Count II); nuisance (Count III); breach of warranty (Count IV); violation of G.L.c. 93A (Count V); wrongful death (Count VI); and conscious pain and suffering (Count VII). The plaintiffs claim that the subject escalator was “unreasonably dangerous, defective and unsafe” due to KONE’s negligence in the design, installation, manufacturing and maintenance of the subject escalator. Gentes’ death on February 26, 2001 was caused, the plaintiffs allege, by the acts and omissions of the defendants.
The case is now before this Court on defendants’ motions for summary judgment and plaintiffs’ cross-motion for summary judgment. For the reasons set forth below the defendants’ motions for summary judgment are ALLOWED and the plaintiffs’ motion for summary judgment is DENIED.
*200 BACKGROUND
The undisputed facts as gleaned from the summary judgment record are summarized below. On January 7, 1998, Patricia Gentes fell as she was riding on an ascending escalator located at South Station Bus Terminal (“Terminal”). The escalator may have stopped abruptly causing Gentes to lose her balance and fall backward down several steps. As a result of the fall, Gentes sustained lacerations to the hand, bruised ribs, a twisted knee, and injury to her back. In the years following the fall, Gentes suffered chronic back and leg pain that required continuous medical treatment. Gentes underwent several surgical procedures to alleviate the back pain which had become increasingly debilitating. For treatment of the pain, Gentes’ doctor prescribed Naprosyn and ultimately Oxycontin. Gentes died on February 26, 2001 due to cardiopulmonary arrest and Oxycodone intoxication.
The escalator on which the accident occurred was equipped with a brake capable of quickly halting the escalator when any safely device is activated. Among the safety devices which might be used to stop the escalator are emergency stop buttons located at the top and bottom landings, a “skirt switch” to stop the escalator when an object lodged between the step and the skirt approaches either landing comb plate, and a mechanism to trigger the brake when the electrical supply is interrupted. The escalator in this case, one of the KONE HR series, was equipped with the above-described safety devices. On August 12, 1997, approximately five months prior to Gentes’ accident, an inspector from the Department of Public Safety performed the annual inspection of the subject escalator and issued a certificate of compliance with all applicable safety requirements.
Plaintiffs’ expert, Robert Sheehan, first inspected the escalator in 2002, some four years after the January 7, 1998 accident. He also reviewed the inspection and maintenance log books as well as certain reports of other accidents occurring on the same escalator in and around the time of the Gentes accident. In the expert disclosure pursuant to Mass.R.Civ.P. 26, Sheehan attributed Gentes’ injury to various acts and omissions outlined in forty-one separate paragraphs. Taken together, these forty-one points sought to establish that the escalator malfunctioned due to an unreasonably unsafe and dangerous defect in the escalator’s design or manufacture and that the defendants negligently maintained the escalator by failing to make regular safety and maintenance inspections.
On motion of the defendants alleging that the plaintiffs’ required disclosure was vague and inadequate, this Court (Sikora, J.) allowed the defendants to depose Sheehan.[3] At the deposition, Sheehan offered only two possible causes of Gentes’ accident on the escalator. First, he opined that the escalator stopped because of a power outage or interruption and that Gentes may have been caused to fall if she was grasping the handrail too tightly and if the handrail and steps were not properly synchronized. Second, Sheehan opined that the accident was caused by the defendant’s erratic maintenance of the escalator.
As to the first asserted theory, Sheehan stated that when he inspected the escalator in 2002, he found the handrails and steps out of synchronization; that is, the speed of the handrails was slower relative to the speed of the stairs. From this observation, Sheehan opined that over the course of Gentes’ ascent this speed differential may have caused her upper body to lag behind her lower body and thereby contributed to Gentes’ backward fall when the escalator stopped. However, Sheehan was unable to say whether this condition existed on January 7, 1998 or whether Gentes was using the handrail as support at the time of the accident.
Though Sheehan also opined that the defendants’ maintenance and inspection schedule was inadequate and erratic, he was unable to specify any defect in the design or manufacture of the escalator and he conceded that he did not know whether any of the claimed deficiencies in maintenance and inspections caused Gentes’ accident on January 7, 1998.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and where the moving party is entitled to judgment as a mater of law. Mass.R.Civ.R 56(c); Commesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’lBank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. GeneralMotors Corp., 410 Mass. 706 (1991). The moving party may support its motion with pleadings, deposition transcripts, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material facts in order to defeat the motion. Pederson, 404 Mass, at 17. The opposing party cannot rest on his or her pleadings or mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
To recover on their negligence claim, the plaintiffs must prove that defendants breached a duty of care to Gentes and that this breach of duty was a substan *201 tial factor in causing Gentes’ injuries and subsequent death. Because the applicable law mandates that an escalator be equipped with mechanisms capable of stopping it in an emergency, plaintiffs must prove at trial that the stop and Gentes’ fall were caused by something other than the proper functioning of the required safety devices. More specifically, they must prove as they alleged in the complaint that the fall and the resulting injuries were caused by either 1) a defect in the design, manufacture or installation of the escalator; 2) the existence of an unreasonably dangerous or unsafe condition in the escalator; 3) a malfunction due to negligent maintenance or repair of the escalator; or 4) that the defendants failed to provide adequate warnings of known risks and dangers. Defendants, citing the deposition testimony of plaintiffs’ designated expert, argue that plaintiffs will be unable to prove negligence based on any of these essential facts at trial. This Court agrees.
As a threshold matter, the facts required to establish defendants’ negligence as alleged cannot be proved in the absence of expert testimony. Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993). Expert testimony must be offered to eliminate other possible causes. Id. Although a plaintiff need not show the exact cause of the accident or exclude all other possible causes, a plaintiff must show that there is a greater probability than not that the accident resulted from a defendant’s negligence. The deposition testimony of the plaintiffs’ designated expert is singularly unhelpful to the plaintiffs in this regard. Abandoning the forty-one points of negligence as set forth in the expert disclosure, plaintiffs’ expert at deposition narrowed his opinion to posit only two theories of negligence: 1) that the accident may have occurred when the escalator stopped because the handrail and the moving step were not properly synchronized; and 2) that the escalator was not properly maintained. Neither of these opinions is supported by the expert’s deposition testimony nor by any other facts of record.
As to the first asserted theory, Sheehan opined that if the escalator was not properly synchronized and if Gentes held the handrail too tightly, these conditions together might have caused Gentes to fall backward. While Sheehan found the handrail and step synchronization to be dangerous upon inspection in 2002, he stated plainly at his deposition that he had no opinion concerning the condition of the escalator on or about January 7, 1998. In addition, he conceded that he did not know whether Gentes was using the handrail to aid her ascent at the time of the fall. In these circumstances, this opinion was nothing more than speculation and would not be admissible at trial to establish the defendants’ negligence. Opinion testimony offered by an expert must be grounded on the relevant facts of the case if it is to assist the jury in deciding a particular issue. Commonwealth v. Lanigan, 419 Mass. 15, 25 (1994).
Sheehan opined that the defendants’ failure to adopt and implement a policy of preventive measures in accordance with industry standards to reduce irregular stoppages, lurching, and other irregular movements directly caused the escalator to abruptly stop, injuring Gentes. According to Sheehan, the defendants’ policy should have included, among other practices, additional and routine safety inspections and more detailed reports on escalator breakdowns. Even assuming the validity of this assertion, it is likewise deficient as proof of the defendants’ negligence. The fundamental problem is that Sheehan was unable to state that defendants’ failure to adopt and implement proper maintenance procedures contributed to or resulted in Gentes’ escalator accident on January 7, 1998. Without establishing a nexus between the alleged maintenance deficiencies and the stoppage of the escalator, the expert’s opinion falls far short of meeting plaintiffs’ burden to prove defendants’ negligence.[4]
Plaintiffs, perhaps anticipating the attack on their expert’s opinion, counter that the defendants’ negligence is established under the doctrine of res ipsa loquitur and that summary judgment should be entered against all the defendants on this ground. The doctrine of res ipsa loquitur “permits a trier of fact to draw an inference of negligence in the absence of finding a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes, including the conduct of the plaintiff, are sufficiently eliminated by the evidence.” Edwards v. Boland, 41 Mass.App.Ct. 375, 377-78 (1996) (citations omitted). Plaintiffs have failed to offer a persuasive argument that the doctrine of res ipsa loquitur should apply in the circumstances of this case. First, plaintiffs cannot establish that but for defendants’ negligence, Gentes would not have fallen and injured herself on the escalator. Gentes’ claim is predicated on the assertion that the escalator stopped abruptly, causing her to fall. Accepting that fact as true, one is not led inevitably to the conclusion that defendants’ negligence caused the stoppage. It is certainly possible and even likely that the escalator could have been stopped for a host of reasons totally unrelated to the defendants’ negligence. Knowing nothing more than that the escalator stopped abruptly, a jury could not rationally exclude the possibility, for example, that a passenger activated one of the required safety devices in order to remove an entangled article of clothing. The plaintiffs cannot rely on res ipsa loquitur where the facts of record do not exclude all other possible causes of the accident. They must come forward with direct evidence of defendants’ negligence. Since they have not done so, their claims cannot survive the motions for summary judgment.
Even if the plaintiffs could prove that defendants’ negligence caused Gentes’ accident, the record is de *202 void of any evidence supporting the wrongful death claim. The record establishes no more than that Gentes suffered injuries as a result of the fall. No medical evidence connects the accident and resulting injuries to Gentes’ death. Defendants’ challenge to the causal relationship between the accident and the death obligated plaintiffs to demonstrate a nexus between the injuries suffered as a result of the accident and the subsequent death. This burden was particularly urgent given the death certificate’s reference to “cardiopulmonary arrest” and “Oxycodone poisoning,” suggesting causes unrelated to the injury sustained on January 7, 1998.
Likewise, the plaintiffs have offered no evidence demonstrating that as of January 7, 1998 the escalator lacked adequate warnings. Indeed, plaintiffs’ expert acknowledged that the warnings were consistent with applicable regulations. To the extent that plaintiffs’ claim negligence based on a failure to warn, this too fails.
Finally, Plaintiffs have also brought a breach of warranty claim against KONE. To prevail on a breach of warranty claim, plaintiffs must prove a “defect in the product or an unreasonably dangerous condition which existed at the time the product left the defendant’s control.” Enrich at 83, citing Colter v. Barber-Greene Co., 403 Mass. 50, 62 (1988). The plaintiffs’ utter failure to come forward with any facts to establish defects in the escalator is fatal to their breach of warranty claim as well.
ORDER
Because the plaintiffs cannot prove any of their asserted claims on this record, the defendants are entitled to judgment as a matter of law on each of the claims asserted in the Fourth Amended Complaint. As to plaintiffs motion for summary judgment, their argument that they are entitled to judgment as a matter of law on the grounds of res ipsa loquitur is without merit. For these reasons, it is hereby ORDERED as follows: Defendants’ motions for summary judgment are ALLOWED. Plaintiffs’ cross motion for summary judgment is DENIED. It is further ORDERED that plaintiffs’ Complaint be DISMISSED.

The Court concluded that “the answers furnished by the plaintiffs to the expert interrogatory ... do not provide a reasonably specific summary of the grounds for any opinion concerning escalator liability by reason of defective design, manufacture, service, maintenance, warnings and record keeping.”

Plaintiffs opposition focuses on Kone’s failure to rebut Gentes’ account of the incident and its failure adequately to explain how the escalator came to stop. This focus is misplaced. Even accepting Gentes’ account of the accident, it remains plaintiffs’ burden to establish that the escalator stopped because of defendants’ malfeasance.